# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 10, 2015  Decided December 29, 2015

No. 14-5224

WALTER J. JACKSON, JR.,
APPELLANT

v.

RAYMOND EDWIN MABUS, JR., SECRETARY OF THE NAVY AND
CHAIRMAN OF THE BOARD FOR CORRECTION OF NAVAL
RECORDS,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01861)

———

*John B. Wells* argued the cause and filed the briefs for appellant.

*Wynne P. Kelly*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Vincent H. Cohen Jr.*, Acting U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: BROWN and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: In 2006, the U.S. Navy honorably discharged Petty Officer Walter Jackson. In so doing, the Navy recommended against re-enlistment. The recommendation against re-enlistment stemmed from Jackson's unauthorized absence from his naval base, a subsequent disciplinary infraction, and two adverse performance evaluations. Since his discharge in 2006, Jackson has repeatedly asked the Board for Correction of Naval Records to correct his Navy record. Under 10 U.S.C. §1552(a)(1), the Board may correct any military record when "necessary to correct an error or remove an injustice." The Board denied Jackson's requests. Jackson filed suit, claiming that the Board's denials contravened the Administrative Procedure Act, the Due Process Clause, and equitable principles. The District Court ruled against Jackson. Given Jackson's infractions in the Navy, we likewise conclude that the Board reasonably denied Jackson's requests for record correction. We therefore affirm the judgment of the District Court.

I

As of 2005, Jackson was stationed at the U.S. Naval Computer and Telecommunications Station in Bahrain. In February 2005, Jackson was counseled for departing base a day before his scheduled leave – in essence, he was warned that he had done something wrong and should not do it again. Later that year, a second incident occurred. Jackson scheduled leave from July 30 to August 15, 2005. Without first seeking a leave extension, Jackson left base on July 29 to catch a flight. According to Jackson, the command duty officer checked him out, even though Jackson's leave did not

begin until the next day. Although a command duty officer lacks authority to approve leave extensions, Jackson said that the command duty officer allowed him to go. So Jackson departed one day earlier than his authorized leave date. Jackson then returned to base on August 16, after his authorized leave had expired.

For exceeding his scheduled leave, Jackson was subsequently charged under the Uniform Code of Military Justice with unauthorized absence. *See* 10 U.S.C. § 886. Jackson elected a procedure known as nonjudicial punishment instead of a court-martial. Nonjudicial punishment is a less formal and speedier disciplinary process.

A servicemember who elects the nonjudicial punishment process is entitled to a hearing before his or her commanding officer or other designated official. At that hearing, the servicemember may be accompanied by a spokesperson and may present evidence and witnesses. If the commanding officer concludes that the servicemember did not commit the alleged offense, the commanding officer must terminate the nonjudicial punishment proceeding. If the commanding officer concludes that the servicemember committed the offense, the commanding officer may impose punishment on that servicemember without a court-martial.

Here, the commanding officer found Jackson guilty of unauthorized absence and docked him a total of one month's pay. The commanding officer also imposed a suspended punishment that would have reduced Jackson's rank from Petty Officer First Class/E-6 to Petty Officer Second Class/E-5. Importantly, however, the rank reduction was suspended for six months. Jackson would *not* have his rank reduced, so long as he did not commit any further disciplinary infractions

during that six-month period. Jackson was duly notified of his right to appeal his punishment. He declined to appeal.

During that six-month probationary period, however, Jackson disobeyed a direct order and engaged in a verbal altercation with a superior officer. He later appeared before a disciplinary military board, where he acknowledged his insubordination. In light of his prior suspended rank reduction, the disciplinary board recommended reducing Jackson's rank. Following that recommendation, the commanding officer reduced Jackson's rank to Petty Officer Second Class/E-5.

Based on his conduct, Jackson received two adverse performance evaluations. The evaluations referred to Jackson's "inability to obey direct orders," his "detrimental" effect on "unit cohesion and moral[e]," and the "significant deterioration in his job performance."

That same month, July 2006, the Navy honorably discharged Jackson and recommended against re-enlistment.

In January 2007, Jackson asked the Board for Correction of Naval Records to correct his record by removing the nonjudicial punishment, the reduction in rank, and the later adverse evaluations.

Under 10 U.S.C. § 1552(a)(1), the Board may amend any military record if the Board considers such action "necessary to correct an error or remove an injustice." However, if the Board "determines that the evidence of record fails to demonstrate the existence of probable material error or injustice," then it may deny an application for record correction. 32 C.F.R. § 723.3(e)(2).

The Board denied Jackson's request to correct his record. The Board's decision cited Jackson's unauthorized absence from base, his later disciplinary infraction, and his adverse evaluations. The Board concluded, among other things, that Jackson's nonjudicial punishment for unauthorized absence was warranted. In support of that conclusion, the Board incorporated a letter by Jackson's commanding officer explaining that Jackson was properly found guilty of unauthorized absence. The letter also noted that Jackson declined to appeal that finding despite being duly notified of his right to do so.

Jackson later submitted several requests for reconsideration, which the Board denied.

Jackson next filed suit in federal court. In the District Court, Jackson challenged the Board's denial of his initial request for record correction as well as the denial of his last request for reconsideration. The District Court granted summary judgment to the Board. *Jackson v. Mabus*, 56 F. Supp. 3d 1 (D.D.C. 2014). We review the District Court's grant of summary judgment de novo. *See Roberts v. United States*, 741 F.3d 152, 157-58 (D.C. Cir. 2014).

II

A

In considering Jackson's initial request to correct his record, the Board applied 10 U.S.C. § 1552(a)(1). That statute permits the Board to amend any military record when "necessary to correct an error or remove an injustice." Primarily citing the Administrative Procedure Act, Jackson claims that the Board acted arbitrarily and capriciously by not correcting his naval record. The APA's arbitrary and

capricious standard is deferential. *See, e.g.*, *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983) ("The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency.") (internal quotation marks omitted). The question is not what we would have done, nor whether we agree with the agency action. Rather, the question is whether the agency action was reasonable and reasonably explained. Moreover, the arbitrary and capricious standard is even more deferential in the military records context. *See Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014).

Here, the Board's initial decision not to amend Jackson's record was reasonable in light of the substantial evidence before it: Jackson was absent from his base without authorization – indeed, he was twice absent, in February 2005 and again in July to August 2005; he committed a subsequent disciplinary infraction; and he received adverse evaluations.

Applying our deferential standard of review, we cannot say that the Board acted unreasonably by declining to amend Jackson's naval record. Absence from base and insubordination are not insignificant offenses in the military. The Board reasonably concluded that Jackson had not shown an error or injustice in his nonjudicial punishment, his reduction in rank, or his adverse evaluations.

B

As to the denial of Jackson's request for reconsideration, the Board considered that request under 32 C.F.R. § 723.9. That regulation provides that the Board will consider requests for reconsideration only if they contain "new and material evidence or other matter not previously considered by the

Board." Evidence is new if it was "not previously considered by the Board and not reasonably available to the applicant at the time of the previous application." *Id.* And "[e]vidence is material if it is likely to have a substantial effect on the outcome." *Id.*

With respect to Jackson's request for reconsideration, our inquiry is this: Did the Board reasonably conclude that Jackson had not come forward with any new and material evidence, or other matter not previously considered by the Board, that would support amendment of his record?

Jackson contends that his request for reconsideration supplied new and material evidence, and new legal arguments. He submitted a report prepared by a retired special agent of the Navy. According to Jackson, the report confirmed that he received authorization from his command duty officer to leave early. In addition, Jackson claimed that under relevant military regulations, his travel time did not count as leave, much less unauthorized leave. Jackson also submitted the results of a polygraph test. By Jackson's account, those results verified that he did not believe he was violating military regulations by departing base a day before his scheduled leave began.

The Board concluded that those arguments and evidence did not require a different result. The Board reasoned, in essence, that Jackson had erred by taking a second unauthorized leave in July 2005 and that the new evidence showed at most that he was mistaken rather than willful in his violation. According to the Board, Jackson was not authorized under the relevant military regulations to extend his leave to cover travel time. Because his authorized time away from base started on July 30, Jackson was not authorized to depart on July 29. The leave regulation that

Jackson cites – Department of Defense Instruction 1327.6 – says that travel time is not counted as leave. But that regulation can reasonably be read, as the Board necessarily did here, as inapplicable to Jackson's case because Jackson did not seek authorization to be away from his base on July 29. The regulation therefore does not disturb the conclusion that Jackson left his base without authorization, received punishment, and did not challenge that punishment. Put another way, the regulation may affect how much leave a servicemember is counted as having taken during an authorized absence. It does not alter the period for which a servicemember is authorized to be absent. Moreover, the relevant military regulations made clear that the command duty officer was not authorized to extend Jackson's leave. In addition, the nonjudicial punishment for that violation – namely, a reduction in rank – was suspended. So long as Jackson stayed out of trouble for six months, he would have suffered no reduction in rank for his unauthorized leave in July 2005. Unfortunately for Jackson, he engaged in substantial misconduct – insubordination – while in that probationary status. In short, the Board acted reasonably in denying Jackson's request for reconsideration.

In his request for reconsideration, Jackson also claimed that his rank was reduced in violation of the procedures set forth in the JAG Manual. That reduction in rank occurred after Jackson's disciplinary infraction, which he committed while he was in the six-month probationary status for his unauthorized absence. Jackson says that JAG Manual section 0118d entitled him to a hearing before a reduction in rank. In fact, that section states that a hearing is *not* always required. Under the circumstances here, the Board could reasonably have concluded that a hearing was not required.

9

C

Jackson advances two final claims before this Court. First, he claims that the Board violated his right to due process under the Fifth Amendment. According to Jackson, the Board did not afford him adequate opportunity to press his claims. That argument is meritless. Jackson advanced a number of theories, and the Board several times reviewed and considered Jackson's claims. Jackson received adequate process. Second, he argues that the Board should have afforded him equitable relief. *See* 10 U.S.C. § 1552. But the Board necessarily possesses wide discretion whether to grant equitable relief under that statute. We have no basis to second-guess the Board's decision not to grant equitable relief.

\* \* \*

This Court has previously cautioned the boards for correction of military records that they must sufficiently explain their reasoning in order to have their decisions sustained. *See, e.g.*, *Roberts v. United States*, 741 F.3d 152, 159 n.\* (D.C. Cir. 2014); *Frizelle v. Slater*, 111 F.3d 172, 176-77 (D.C. Cir. 1997). Despite our admonitions, the Board's explanation for denying Jackson's request for reconsideration was thinner than it should have been – unlike the Board's detailed explanation for denying Jackson's initial application for correction. We again urge the relevant boards to take care to sufficiently address each non-frivolous claim raised by an applicant for record correction. We affirm the judgment of the District Court.

*So ordered.*