UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1598

KOFI OWUSU-BOAKYE,

Plaintiff – Appellant,

v.

WILLIAM P. BARR, in his official capacity as U.S. Attorney General; CHAD
WOLF, Acting Secretary, Department of Homeland Security; KIMBERLY
ZANOTTI, Field Office Director, U.S. Citizenship and Immigration Services,
Washington, DC Field Office; SARAH TAYLOR, District Director, U.S.
Citizenship and Immigration Services Washington, DC District Office; KENNETH
T. CUCCINELLI, Senior Official Performing the Duties of the Director, U.S.
Citizenship and Immigration Services; MEMBER DOE, Board of Immigration
Appeals,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia at
Alexandria. T.S. Ellis, III, Senior District Judge. (1:18-cv-01344-TSE-MSN)

Argued: September 11, 2020                     Decided: November 16, 2020

Before HARRIS, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Steffanie Jones Lewis, THE INTERNATIONAL BUSINESS LAW FIRM
PC, Washington, D.C., for Appellant. Dennis C. Barghaan, Jr., OFFICE OF THE UNITED

STATES ATTORNEY, Alexandria, Virginia, for Appellees. **ON BRIEF:** G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case arose when Kofi Owusu-Boakye, a United States citizen, sought a visa for his wife, Auddismart Adubofour. The Board of Immigration Appeals ("BIA") ultimately denied Owusu-Boakye's petition after determining that Adubofour previously had entered into a sham marriage – with a different man, Lennard King – to obtain immigration benefits. Although King originally defended his former marriage to Adubofour, he later admitted that the marriage had been fraudulent, and that admission figured prominently in the BIA's determination.

Owusu-Boakye filed suit under the Administrative Procedure Act, claiming that the BIA's fraud determination was not supported by substantial evidence and that the BIA erred by crediting an admission from King that was contradicted by his earlier statements. Owusu-Boakye also challenged certain procedural aspects of the decision, claiming in particular that the government's failure to make King available for cross-examination violated Owusu-Boakye's constitutional due process rights.

The district court granted summary judgment to the government on all counts, and we now affirm. Like the district court, we find that substantial evidence supports the decision of the BIA. And because the due process claim Owusu-Boakye presses on appeal relies on a predicate never raised before the district court, we consider that claim waived. Likewise, we will not review Owusu-Boakye's final claim – of agency bias against Adubofour – because it also is raised for the first time on appeal.

# I.

## A.

In March of 2009, Kofi Owusu-Boakye married Auddismart Adubofour, a Ghanaian national who has lived in the United States since 2001. To obtain an immigrant visa for Adubofour, Owusu-Boakye submitted on her behalf an I-130 Petition for Alien Relative, effectively requesting that Adubofour be classified as his immediate relative for immigration purposes. *See* 8 U.S.C. § 1154(a); *Moore v. Frazier*, 941 F.3d 717, 719–20 (4th Cir. 2019) (describing I-130 petition as "the first step to having a non-citizen's immigration status reclassified based on a familial relationship to a U.S. citizen"). At issue in this appeal is the BIA's denial of Owusu-Boakye's petition – not because the agency believed Owusu-Boakye's own marriage to Adubofour was fraudulent, but because it determined that Adubofour previously had "entered into" a different marriage "for the purpose of evading the immigration laws." *See* 8 U.S.C. § 1154(c) (prohibiting adjustment of immigration status for non-citizens with prior fraudulent marriages).

### 1.

Adubofour's purportedly fraudulent marriage was to United States citizen Lennard King. That couple married in Arlington, Virginia, in 2003. King promptly filed an I-130 petition on Adubofour's behalf, which was approved. Several years later, however, the United States Citizenship and Immigration Services ("USCIS") notified King that it intended to revoke that approval, because it suspected that his marriage was a "sham marriage, entered into solely for immigration purposes." J.A. 262. In support, USCIS pointed to a lack of evidence that the couple had comingled their assets; evidence that they

4

had misrepresented their living arrangements; and the fact that, in individual interviews with USCIS officers, King and Adubofour gave conflicting answers about personal details ranging from financial matters to whether King had tattoos.

King responded to the notice with a letter defending the legitimacy of his marriage to Adubofour. Nevertheless, USCIS revoked its approval of the I-130 petition – five months after King and Adubofour divorced in January of 2009.

2.

Owusu-Boakye married Adubofour shortly after her divorce was finalized and submitted an I-130 petition on her behalf in May of 2009. In 2013, USCIS notified Owusu-Boakye that it intended to deny the petition and then, after Owusu-Boakye responded, issued a decision denying the I-130 petition. According to USCIS, the record contained "substantive and probative evidence" that Adubofour's prior marriage to King was fraudulent, "entered into solely to obtain immigration benefits." J.A. 319. USCIS again emphasized multiple inconsistencies in the couple's testimony about their living arrangements and personal affairs, finding that King had provided no reasonable explanation for why Adubofour would be unaware of his tattoos. The decision also relied on a new interview USCIS conducted with King, in which he continued to defend his marriage to Adubofour as legitimate. Instead of noting that defense, however, USCIS focused on what it viewed as several shortcomings in King's account: King admitted, for instance, that he had never lived at what he and Adubofour previously claimed was a joint address, that he never moved out of his family's home during the marriage, and that he failed to tell his family initially – or his probation officer ever – about the marriage.

5

Owusu-Boakye appealed, and in October of 2014, the BIA reversed and approved his visa petition. An inference of fraud, the BIA held, is not sufficient to bar the approval of an I-130 petition. Absent more direct evidence – and here, the BIA noted specifically the absence of a "confession from Lennard [King]" – the record did not "clearly demonstrate[]" that Adubofour entered into her marriage with King "for the purpose of evading immigration laws." J.A. 343.

As it turns out, USCIS had continued to investigate during the BIA proceedings, and had uncovered additional evidence. First, in February of 2014, USCIS officers again interviewed King, who this time admitted that his marriage to Adubofour had been fraudulent. In a written affidavit, King provided details: Someone named Eric approached King at a mall in Virginia, asked "if [he] wanted to make some money," and then paid him $3,500 to marry Adubofour at the courthouse in Arlington, Virginia. J.A. 323. King had never lived with Adubofour or consummated his marriage to her, did "not intend to be with [Adubofour] in marriage," and assumed that the sham marriage had been effectuated "for citizenship" purposes. *Id.*

Second, and based in part on King's affidavit, a USCIS agent determined that Adubofour's prior marriage was part of the "Arlington Marriage Fraud" conspiracy, an immigration fraud conspiracy run in Arlington, Virginia, by a man named Eric Amoah. The agent laid out that conclusion in a Statement of Findings, detailing links between Adubofour's marriage and the broader conspiracy, including the time period involved and the fact that Adubofour and King, both of whom lived in Maryland, traveled to Arlington,

6

Virginia, to marry. The Statement of Findings also revisited much of the prior evidence on which USCIS had relied for its fraud determination.

In May of 2015, USCIS notified Owusu-Boakye that it intended to revoke the approval of his I-130 petition. In its notice, USCIS relied on King's admission – which had not been before the BIA when it ruled on Owusu-Boakye's appeal – and also reiterated the evidence on which it had based its initial denial of Owusu-Boakye's petition. A copy of King's affidavit was included with the notice, but the Statement of Findings was not. Over Owusu-Boakye's objections, USCIS revoked approval in September of 2015.

On appeal, the BIA affirmed, holding that King's new admission, considered together with the prior record evidence, "qualifies as good and sufficient cause to revoke the visa petition." J.A. 373. The BIA rejected Owusu-Boakye's argument that King's admission – made "against his own interests" – was not credible, reasoning that Owusu-Boakye could provide no "persuasive explanation of why Mr. King would falsely confess to marrying [Adubofour] for money, especially in light of the possible penalties for any individual committing marriage fraud." *Id.* (internal quotation marks omitted). Nor, the BIA held, had the agency violated Owusu-Boakye's due process rights by considering King's new affidavit, in conjunction with other evidence, without making King available for cross-examination; no statute or regulation requires cross-examination of affiants, the BIA explained, and King had not otherwise shown a due process violation.

After the BIA denied reconsideration, Owusu-Boakye submitted a new I-130 petition on behalf of Adubofour. USCIS denied the petition, primarily for the same reasons

7

previously given, but also relying in part on its investigative finding that Adubofour's prior marriage was connected to the Arlington Marriage Fraud conspiracy.

The BIA again affirmed and dismissed Owusu-Boakye's appeal in April of 2018. It agreed with USCIS that there was "substantial and probative evidence" that Adubofour's marriage to King was fraudulent. J.A. 438. The BIA highlighted King's admission – which, it noted, had not been before it when it first approved Owusu-Boakye's petition in 2014 – and the USCIS determination that the marriage between Adubofour and King was "part of a large-scale marriage fraud ring." *Id.* And it again rejected Owusu-Boakye's argument that the agency could not rely on King's admission because it was inconsistent with King's prior statements and because King was not produced for cross-examination by Owusu-Boakye.

**B.**

In October of 2018, Owusu-Boakye filed this suit in federal district court. Invoking the Administrative Procedure Act ("APA"), Owusu-Boakye advanced three main claims: First, he argued that the denial of his I-130 petition was arbitrary and capricious because it was not supported by substantial evidence of marriage fraud; King's admission of fraud, Owusu-Boakye contended, was not credible and should not have been considered. Second, Owusu-Boakye argued that the agency violated his constitutional due process rights by infringing on his "constitutionally protected liberty interest in marriage and family life" without making King available for cross-examination. J.A. 52. And third, Owusu-Boakye argued that various aspects of the proceedings – including the agency's failure to provide

8

him with a copy of its Statement of Findings regarding the Arlington Marriage Fraud conspiracy – violated federal regulations.

In a thorough and carefully reasoned decision, the district court granted summary judgment to the government on all counts. *See Owusu-Boakye v. Barr*, 376 F. Supp. 3d 663 (E.D. Va. 2019). As to the substantial evidence claim, the district court began by explaining the "well-settled deferential standard of review," under which the agency's factual findings may be set aside only if "no reasonable factfinder could agree." *Id.* at 675–76 (quoting *Gandziami-Mickhou v. Gonzales*, 445 F.3d 351, 354 (4th Cir. 2006)). The court recognized, as Owusu-Boakye emphasized, that standing alone, the agency's initial evidence of fraud – focused on Adubofour and King's inconsistent answers to questions about their financial and living arrangements – was deemed insufficient by the BIA. But when King's admission and information regarding the Arlington Marriage Fraud conspiracy were added to the mix, the district court concluded, the substantial evidence standard was "more than amply" satisfied. *Id.* at 675. Nor, the court held, did the agency err by relying on King's admission of marriage fraud, notwithstanding his earlier inconsistent statements; as the agency explained, King's admission was against interest and corroborated by other record evidence, and there was no explanation for why he might falsely admit to a sham marriage.

With respect to Owusu-Boakye's due process claim, the district court described the governing two-step analysis, under which a claimant must "first demonstrate that he or she was deprived of a protected liberty or property interest," and then "that the procedures attendant upon that deprivation were not constitutionally sufficient." *Id.* at 680 (citing *Ky.*

9

*Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  As to the first prong, Owusu-Boakye asserted that he was being deprived of just one protected interest:  "a protected liberty interest in residing with his spouse in the United States."  *Id.*  Noting that the Supreme Court recently had left open the question of whether a citizen has a protected liberty interest in residing in the United States with a non-citizen spouse, *see Kerry v. Din*, 576 U.S. 86 (2015), the district court declined to reach that question.  Instead, it held that even if Owusu-Boakye did have such a protected liberty interest, the agency's "lengthy and numerous proceedings" on Owusu-Boakye's I-130 petitions provided him with constitutionally sufficient process:  multiple notices of the information on which the agency intended to rely in denying his petitions, time for Owusu-Boakye to submit rebuttal argument and evidence in response, and detailed and well-reasoned written decisions explaining the denials.  *Owusu-Boakye*, 376 F. Supp. 3d at 682.

The district court also rejected Owusu-Boakye's claim that the agency violated its own regulations by failing to provide him with an opportunity to cross-examine King or a copy of the Statement of Findings connecting Adubofour's prior marriage to the Arlington Marriage Fraud conspiracy.  The relevant regulations, the court found, did not provide for the cross-examination of witnesses or mandate production of the Statement of Findings itself.  Instead, the regulations required the agency to disclose to Owusu-Boakye "derogatory information" that might be used to deny his petitions, *see* 8 C.F.R. § 103.2(b)(16)(i) – an obligation the agency satisfied when it summarized in its notices to Owusu-Boakye both the substance of King's confession and its finding that Adubofour's marriage to King had been facilitated by the Arlington Marriage Fraud conspiracy.

10

## II.

On appeal, Owusu-Boakye advances three arguments, some for the first time. First, he argues that the district court erred in holding that substantial evidence supports the agency's denial of his I-130 petitions. He also contends that the district court erred in its due process analysis, but bases his due process claim on a protected property interest in an approved I-130 petition, not the protected liberty interest in marriage he asserted before the district court. Finally, Owusu-Boakye argues, also for the first time on appeal, that USCIS was impermissibly biased against Adubofour.

We review de novo the district court's grant of summary judgment, *see Brooks v. Johnson*, 924 F.3d 104, 111 (4th Cir. 2019), and for the reasons that follow, we affirm.

## A.

Owusu-Boakye first argues that the BIA erred in its determination that Adubofour previously committed marriage fraud, a factual determination that we review under the substantial evidence standard. *See Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015); *see also Bangura v. Barr*, 784 F. App'x 179, 180 (4th Cir. 2019) (per curiam) (applying the substantial evidence standard in challenge to denial of I-130 petition based on USCIS's finding that the applicant's spouse had previously committed marriage fraud).[1] As the

---

[1] Although Owusu-Boakye frames this challenge as a claim that the agency's decision was arbitrary and capricious under the APA, "there is no meaningful difference between this standard and the substantial evidence standard" when reviewing agency findings of fact. *GTE S., Inc. v. Morrison*, 199 F.3d 733, 745–46 n.5 (4th Cir. 1999).

district court emphasized, this is a distinctly deferential standard of review, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *T-Mobile Ne. LLC v. City Council of City of Newport News*, 674 F.3d 380, 385–86 (4th Cir. 2012) (internal citation and quotation marks omitted). Put differently, we may set aside the agency's factual findings only if the evidence to the contrary is so compelling that "no reasonable factfinder could agree" with the agency decisionmakers. *Gandziami-Mickhou*, 445 F.3d at 354.

For the reasons given by the district court in its detailed opinion, *see Owusu-Boakye*, 376 F. Supp. 3d at 675–78, we agree that there is substantial record evidence to support the agency's marriage-fraud determination. We recognize, as Owusu-Boakye argues, that King's 2014 admission played a pivotal role in the agency's factfinding: Before the admission was brought before it, the BIA found insufficient evidence of marriage fraud; after it was presented with the admission, the BIA concluded that there *was* sufficient evidence to revoke the approval of Owusu-Boakye's visa petition. And we appreciate that the admission was inconsistent with King's previous statements defending his marriage to Adubofour, raising what Owusu-Boakye characterizes as significant questions about its credibility. But as the district court explained, the agency weighed those credibility questions for itself, and concluded that King's 2014 admission – made against interest and with no apparent motive to lie – was reliable enough to be considered. That is a judgment

---

Owusu-Boakye understands as much, describing his claim as one that contests the existence of substantial evidence of marriage fraud.

left to the agency; on substantial-evidence review, we do not "re-weigh conflicting evidence" or "make credibility determinations" of our own. *See Pro. Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, 781 F.3d 161, 174 (4th Cir. 2015) (internal quotation marks omitted).

In any event, as the district court further explained, King's admission was not deemed dispositive by itself, but only considered together with additional evidence that King and Adubofour's relationship was not genuine. That evidence included significant discrepancies in the accounts given by King and Adubofour of their financial and living arrangements, as well as the discovery of connections between their marriage and the Arlington Marriage Fraud conspiracy. All told, we concur in the district court's judgment that a "reasonable factfinder could certainly agree that Adubofour and King married in order to evade immigration laws." *Owusu-Boakye*, 376 F. Supp. 3d at 678.

**B.**

Owusu-Boakye next claims that his constitutional due process rights were violated when the agency relied on King's admission without first making King available for cross-examination, and that the district court erred in holding otherwise. On appeal, however, Owusu-Boakye rests his due process claim on a protected interest that he failed to present to the district court. As a general rule, we "will not accept on appeal theories that were not raised in the district court," *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (internal citation omitted), and we therefore decline to address Owusu-Boakye's due process claim.

As the district court explained, to succeed on his procedural due process claim, Owusu-Boakye was required to establish two things: first, that he possessed a

13

constitutionally protected liberty or property interest; and second, that he was deprived of that interest without constitutionally sufficient procedures. *Owusu-Boakye*, 376 F. Supp. 3d at 680; *see Martin v. Duffy*, 858 F.3d 239, 253 (4th Cir. 2017). Before the district court, Owusu-Boakye relied on the constitutional right to marry recognized in *Loving v. Virginia*, 388 U.S. 1 (1967), and argued that he had a protected liberty interest in living in the United States with his wife. *Owusu-Boakye*, 376 F. Supp. 3d at 680. On appeal, however, Owusu-Boakye abandons that argument; it does not appear in his briefs, and counsel clarified at oral argument that Owusu-Boakye no longer asserts any protected liberty interest in living with his spouse in the United States.

Instead, Owusu-Boakye urges us to recognize a different protected interest as the predicate for his due process claim on appeal: a property interest in an approved I-130 petition, arising from what he describes as "mandatory" statutory language governing I-130 petitions. *See Smith v. Ashcroft*, 295 F.3d 425, 429–30 (4th Cir. 2002) (recognizing that statutory language may create a "vested liberty or property interest giving rise to procedural due process protection" when there is an "entitlement to the benefit as directed by statute"); *see also* 8 U.S.C. § 1154(b) (stating that the USCIS director "shall . . . approve" an I-130 petition if he determines that the facts in the petition are true and that the immigrant is an immediate relative). But that argument is waived, as it was not presented to the district court. In front of the district court, Owusu-Boakye focused exclusively on his purported marriage-related liberty interest. *See, e.g.*, J.A. 5 (complaint); J.A. 87–88 (motion for summary judgment); J.A. 173 (reply in support of motion for summary judgment). And while Owusu-Boakye's summary judgment briefing did include

14

a cursory and unexplained reference to a "statutory right to obtain a visa," J.A. 173 – in the middle of a paragraph devoted to *Loving v. Virginia* and the right to marry – there was nothing to put the district court on notice that Owusu-Boakye was asserting a second and distinct protected constitutional interest. *Cf. In re Under Seal*, 749 F.3d at 287 (explaining that a party waives an argument if it is not presented with enough clarity and specificity to "alert the district court" to the need to address it).

As we have explained, "[a]rguments raised in a trial court must be specific and in line with those raised on appeal." *Id.* Owusu-Boakye's new-found argument in support of a protected property interest in an approved I-130 petition does not meet that standard, and so we consider it waived on appeal. *Id.* at 285 ("[A]bsent exceptional circumstances, we do not consider issues raised for the first time on appeal.") (internal quotation marks and alteration omitted). Having waived this argument and abandoned the alternative argument he pressed before the district court, Owusu-Boakye now can assert no constitutionally protected liberty or property interest that could give rise to a due process violation. For that reason, he cannot prevail as a matter of law, and the government is entitled to summary judgment on his due process claim.

## C.

For the same reason, we may dispense briefly with Owusu-Boakye's final claim, alleging agency bias. According to Owusu-Boakye, after discovery of the Arlington Marriage Fraud conspiracy, the USCIS director was predisposed to find that Adubofour had entered into a sham marriage with King and pushed USCIS investigators to find

15

evidence in support of that predetermined outcome. This claim, too, was neither presented

to nor passed on by the district court, and we deem it waived on appeal. *See id.*[2]


### III.

For the reasons given above, the judgment of the district court is affirmed.

*AFFIRMED*

---

[2] In connection with his bias claim, Owusu-Boakye appears to reprise his argument before the district court that the agency violated its own regulations when it failed to produce to him the USCIS Statement of Findings. Had the Statement of Findings been produced, Owusu-Boakye contends, he would have been better able to make his showing of agency bias. Because this argument appears only in reference to the waived bias claim, we question whether it is properly before us. In any event, we agree with the district court that it is incorrect. *See Owusu-Boakye*, 376 F. Supp. 3d at 678–80. The relevant regulation, 8 C.F.R. § 103.2(b)(16), did not require the agency to produce the Statement of Findings itself; instead, the agency satisfied its obligations under the regulation by disclosing the substance of the "derogatory information" on which the Statement of Findings relied.