# United States Court of Appeals
## For the First Circuit

No. 14-1947

RANIAH FATHI ATIEH and FUAD FAROUQ ATIEH,

Plaintiffs, Appellants,

v.

DENIS C. RIORDAN, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

Saher J. Macarius, Audrey Botros, and Law Offices of Saher J. Macarius LLC for appellants.
Benjamin C. Mizer, Acting Assistant Attorney General, Office of Immigration Litigation, Civil Division, United States Department of Justice, William C. Peachey, Director, Colin A. Kisor, Deputy Director, and J. Max Weintraub, Senior Litigation Counsel, for appellees.

August 14, 2015

**SELYA**, **Circuit Judge**. To borrow a phrase often attributed to a homespun philosopher, Lawrence "Yogi" Berra, this case is déjà vu all over again. For a second time, Fuad Farouq Atieh and his wife Raniah appeal from a district court judgment affirming a decision of the Board of Immigration Appeals (BIA) denying Raniah's petition to grant Fuad lawful permanent resident status. After careful consideration, we affirm.

## I. BACKGROUND

Fuad Atieh, a Jordanian national, entered the United States on a six-month visa in 1992. He overstayed, and roughly a decade later (on March 17, 2003), he was placed in removal proceedings by the United States Citizenship and Immigration Services (USCIS). While those proceedings were pending, Fuad married his first cousin, Jamileh Khudari (a U.S. citizen), at a January 2004 ceremony in Lowell, Massachusetts. His new wife subsequently filed an I-130 visa petition for an alien relative (here, Fuad). See 8 U.S.C. § 1151(a)(1). The marriage quickly disintegrated: Fuad and Jamileh divorced on December 12, 2004. Not surprisingly, Jamileh withdrew her I-130 petition.

In August of 2005, Fuad married Raniah, who was also a U.S. citizen. Some two months later, Raniah filed an I-130 petition on Fuad's behalf. On March 3, 2006, USCIS interviewed Fuad and Raniah in connection with that petition. Fuad told the examining officer that his earlier marriage to Jamileh had been

arranged by the couple's parents and that he had never been in love with her. He admitted, though, that he and his parents had hoped that he might acquire lawful permanent resident status through Jamileh.

In May of 2006, USCIS issued a notice of intent to deny the I-130 petition. See 8 U.S.C. § 1154(c). The notice cited the allegedly fraudulent nature of Fuad's first marriage as the impetus for USCIS's intended decision and invited the applicants to submit any additional evidence that they might have in support of their position. The Atiehs responded by submitting several affidavits, including affidavits from Jamileh, Jamileh's parents, Fuad's parents, and Fuad himself. In his statement, Fuad acknowledged that, prior to marrying Jamileh, he had expressed a romantic interest in Raniah and had contacted her parents to gain their approval, only to be rebuffed.

On December 6, 2007, USCIS denied the I-130 petition. It found, based on the record as a whole, that Fuad's marriage to Jamileh was designed to evade the immigration laws. This decision was upheld by the BIA, which concluded that the Atiehs had failed to prove the bona fides of Fuad's first marriage.

The Atiehs countered by attacking on two fronts. First, they sued in the federal district court, seeking to set aside the

BIA's ukase.[1]  Second, they filed yet another I-130 petition with USCIS.  The district court prudently held the Atiehs' suit in abeyance pending the agency's adjudication of the new petition.

The Atiehs achieved no better result the second time around.  On March 25, 2010, they received notice of USCIS's intent to deny their latest petition.  The notice explained that affidavits from various family members showed no compelling evidence that the marriage between Fuad and Jamileh was either bona fide or contracted in good faith.  Moreover, bank statements submitted by the Atiehs showed little if any evidence of any comingling of marital funds between Fuad and Jamileh.  Although the Atiehs objected to this notice, they proffered no additional evidence and USCIS denied relief on May 5, 2010.  The BIA subsequently affirmed.  Undaunted, the Atiehs filed an amended complaint in their district court suit.

The district court dissolved its earlier stay of proceedings and, in October of 2012, granted the defendants' motion to dismiss for failure to state a claim upon which relief could be granted.[2]  See Atieh v. Riordan, No. 09-10977, 2012 WL 4498909, at

---

[1] The district court had jurisdiction over such a suit pursuant to the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 706. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] The defendants are Denis C. Riordan, Director, Boston Service Center; Jeh C. Johnson, Secretary, Department of Homeland

- 4 -

*5 (D. Mass. Oct. 2, 2012); see also Fed. R. Civ. P. 12(b)(6).  We vacated the order of dismissal on procedural grounds, without reaching the merits.  See Atieh v. Riordan, 727 F.3d 73, 77 (1st Cir. 2013).

Remitted to the district court, the parties cross-moved for summary judgment on the issue of whether the administrative record adequately supported the denial of I-130 relief.  The district court granted summary judgment in the government's favor, thus affirming the BIA's final order.[3]  See Atieh v. Riordan, No. 09-10977, 2014 WL 3749430, at *1 (D. Mass. July 30, 2014).

## II.  ANALYSIS

Under the APA, a reviewing court may set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," such as if it is "unsupported by substantial evidence."  5 U.S.C. § 706(2); see River Street Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st

---

Security; Loretta E. Lynch, United States Attorney General; Carmen M. Ortiz, United States Attorney, District of Massachusetts; and Michael Aytes, Director, USCIS.  For ease in exposition, we refer to them collectively as the government.

[3] The Atiehs' amended complaint does not distinguish between the two adverse BIA decisions.  The district court determined, however, that "the denial of the first [I-130] petition was effectively superseded by the denial of the second petition." Atieh, 2012 WL 4498909, at *1.  The Atiehs have not challenged this determination, so we focus the lens of our inquiry on the BIA's denial of the most recent I-130 petition.

Cir. 2009). This standard is quite narrow: a reviewing court "may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions." River Street Donuts, 558 F.3d at 114. Consequently, judicial review of agency decisions is "highly deferential." Id. If the agency's decision is supported by any rational view of the record, a reviewing court must uphold it. See id.

Because both the district court and this court are bound by the same standard of review, our review of the district court's decision in an APA case is de novo. See Royal Siam Corp. v. Chertoff, 484 F.3d 139, 144 (1st Cir. 2007). Thus, our review in this case is, in effect, direct review of the BIA's decision.

With the standard of review in place, we turn to the Immigration and Nationality Act (the Act). Under the Act, an alien may achieve lawful permanent resident status if he qualifies as an "immediate relative" of a U.S. citizen. See 8 U.S.C. § 1151(b)(2)(A)(i); see also Taing v. Napolitano, 567 F.3d 19, 21 (1st Cir. 2009). For this purpose, the term "immediate relative" includes children, parents, and spouses. See 8 U.S.C. § 1151(b)(2)(A)(i).

To obtain the benefit of these provisions, an interested citizen must file an I-130 petition with the Attorney General on behalf of her immediate relative/alien. See id. § 1154(a)(1)(A)(i). Where the immediate relative/alien is a

spouse, the Act provides for especially careful scrutiny of the petition. If the Attorney General determines either that the alien entered into a marriage "for the purpose of evading the immigration laws" or that the alien "attempted or conspired" to do so, the alien will be rendered ineligible for lawful permanent resident status. See id. § 1154(c).

Here, moreover, yet another hurdle must be cleared. When an alien enters into a marriage after the government has initiated removal proceedings — as Fuad did — the alien must carry the burden of demonstrating, by clear and convincing evidence, that he entered into the marriage in good faith. See id. § 1255(e)(3).

An agency's finding regarding the bona fides of a marriage is normally regarded as a finding of fact. See Agyei v. Holder, 729 F.3d 6, 14 (1st Cir. 2013); Krazoun v. Ashcroft, 350 F.3d 208, 210-12 (1st Cir. 2003). Thus, such a finding is reviewed under the substantial evidence standard. See Agyei, 729 F.3d at 13; Soeung v. Holder, 677 F.3d 484, 487 (1st Cir. 2012). This means that a court "cannot contravene the agency's factfinding unless a reasonable adjudicator would be compelled to reach a contrary conclusion." Agyei, 729 F.3d at 13. Within this rubric, a credibility determination is a finding of fact; and we will uphold such a finding so long as the agency "articulate[s] specific and cogent reasons" to support its view. Ahmed v. Holder, 765 F.3d 96, 101 (1st Cir. 2014).

This brings us to the Atiehs' arguments on appeal. Their asseverative array boils down to a plaint that the BIA erred in concluding that Fuad's first marriage was fraudulent. Specifically, they argue that the BIA misconstrued certain evidence, ignored other evidence indicating that Fuad's first marriage was bona fide, and failed to consider the record in its entirety. We address these arguments as a seamless whole.

The BIA relied heavily on the trial-level decision of USCIS, which gave ample scrutiny to the record (including the interviews with the Atiehs and the various affidavits). Several key facts led the agency to its conclusion that Fuad's first marriage was fraudulent. We enumerate some of those facts.

- Fuad married Jamileh only after removal proceedings had been instituted against him.

- He entered into that marriage notwithstanding a demonstrated romantic interest in Raniah.

- During his USCIS interview in March of 2006, Fuad acknowledged not only that his parents had pressured him to marry Jamileh but also that both he and his parents had hoped that the marriage would prove to be a vehicle for obtaining lawful permanent resident status.

- Fuad admitted that he had unsuccessfully pursued a romantic relationship with his present wife even before he married Jamileh.

- The bank statements and other data in the record showed little or no commingling of funds between Fuad and Jamileh during their marriage.

These facts, when viewed in concert, were sufficient to support USCIS's inference that Fuad had never intended to have a lasting marriage with Jamileh but, rather, had used his first marriage only as a contrivance to avoid deportation and pave the way for securing a favorable immigration status.  The BIA agreed:  it supportably found that the record, viewed in its totality, indicated that "[Fuad's] intention all along was to marry [Raniah] and not remain married to [Jamileh]."  There is no principled way for us to say that the BIA's determination lacked a rational basis.  The BIA marshalled specific reasons for finding Fuad's first marriage fraudulent and cogently explained its reasoning.  No more is exigible.  See Ahmed, 765 F.3d at 101.  After all, the agency is in the best position to gauge the inferences to be drawn from the facts, see Syed v. Ashcroft, 389 F.3d 248, 251-52 (1st Cir. 2004), and we have no basis here for second-guessing its assessment of those facts.

This is especially true due to the weight of the burden that the Atiehs must shoulder.  Once the BIA decided the marriage fraud issue against them, they had an obligation to point to evidence "'so compelling that no reasonable fact finder could fail' to find that [Fuad] had a bona fide marriage."  Mendes v. INS, 197

F.3d 6, 13 (1st Cir. 1999) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992)). They have not come close to fulfilling that obligation.

The Atiehs demur, offering a salmagundi of reasons why the agency's decision is infirm. None of these reasons is persuasive.

To begin, the Atiehs argue that the BIA misconstrued several key pieces of evidence, such as Fuad's statements about hoping to obtain lawful permanent resident status through his marriage to Jamileh and his admission about his prior courtship of Raniah. As to the former, the Atiehs suggest that the involvement of Fuad's parents in his first marriage proves that this was intended to be a lasting union. As to the latter, they suggest that Fuad's initial pursuit of Raniah demonstrated only that he was "looking for a permanent wife." There may be plausible interpretations of Fuad's admissions, particularly given the evidence that the Atiehs submitted describing the cultural norms surrounding an arranged marriage. As even the BIA acknowledged, "arranged marriages are not fraudulent per se, so long as the intent of the parties at the time the marriage was entered into was to establish a life together." But Fuad's interpretations are not the only reasonable ones.

This is a critical distinction. Under the deferential standard of review, we may not disturb the agency's factfinding

unless "a reasonable adjudicator would be compelled to reach a contrary conclusion." Agyei, 729 F.3d at 13. That benchmark cannot be achieved when — as in this case — the raw facts support competing but reasonable inferences. See Villafranca v. Lynch, ___ F.3d ___, ___ (1st Cir. 2015) [No. 14-1881, slip op. at 4]; Lopez de Hincapie v. Gonzales, 494 F.3d 213, 219-20 (1st Cir. 2007).

Next, the Atiehs submit that Fuad's admissions cannot justify the denial of an I-130 petition because they do not constitute direct admissions that he is guilty of marriage fraud. This is pure codswallop: although an admission of guilt is surely sufficient for a finding of marriage fraud, such an admission is not a sine qua non for such a finding. See, e.g., Mendes, 197 F.3d at 13 (upholding BIA's finding that alien committed marriage fraud in the absence of any admission of guilt). It is perfectly appropriate for an agency to rely on reasonable inferences in determining the existence vel non of marriage fraud.[4]

---

[4] In all events, even if particular facts "may not have been sufficient individually to establish a finding of fraud," those same facts, when taken together, may provide "ample support" for an agency to infer a fraudulent marriage. Agyei, 729 F.3d at 15; cf. Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 34 (1st Cir. 2012) (noting, with regard to evidentiary presentations, that "the whole is sometimes greater than the sum of the parts").

We find equally unconvincing the Atiehs' contention that the BIA should have given greater weight to the affidavits submitted by Jamileh, Jamileh's parents, and Fuad's parents. Weighing the evidence is, within wide limits, the exclusive province of the agency, see Ayeni v. Holder, 617 F.3d 67, 72-73 (1st Cir. 2010) — and those limits have not been exceeded here. To the contrary, the agency fully discharged its duty by fairly considering the Atiehs' submissions and "articulat[ing] its decision in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence and the issues and reached a reasoned conclusion." Raza v. Gonzales, 484 F.3d 125, 128 (1st Cir. 2007). On this record, then, we lack the authority to "substitute [our] judgment for that of the agency." River Street Donuts, 558 F.3d at 114.

For essentially the same reasons, we reject the Atiehs' assertion that the agency erred in failing fully to consider evidence relating to the post-marriage conduct of Fuad and Jamileh. The record makes manifest that the agency considered the post-marriage evidence but found — reasonably, in our view — that this evidence did not inure to the Atiehs' benefit.

The short of it is that this is a case of dueling inferences drawn from largely undisputed facts. We have said before — and today reaffirm — that when the BIA is faced with "two plausible but conflicting inferences from a body of evidence, the

BIA's choice between those inferences is by definition supported by substantial evidence." <u>Ruiz</u> v. <u>Mukasey</u>, 526 F.3d 31, 37 (1st Cir. 2008).  So it is here.

**III.  CONCLUSION**

We need go no further.  For the reasons elucidated above, the district court's judgment is


**<u>Affirmed</u>.**