# United States Court of Appeals
## For the First Circuit

No. 23-1615

DANIEL RICHARD MAHONEY,

Plaintiff, Appellant,

v.

CARLOS DEL TORO, Secretary, U.S. Department of the Navy,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Rikelman, Lynch, and Howard,
Circuit Judges.

Emily Dupraz, with whom Jeff Goldman and Morgan, Lewis & Bockius LLP were on brief, for appellant.
Michael L. Fitzgerald, Assistant United States Attorney, with whom Joshua S. Levy, Acting United States Attorney, was on brief, for appellee.

April 18, 2024

**LYNCH**, **Circuit Judge**.  Appellant Daniel Richard Mahoney, a U.S. Navy veteran, argues that the district court erred in rejecting his Administrative Procedure Act ("APA") challenge to the Board for Correction of Naval Records' ("BCNR") decision denying his 2018 petition to upgrade his 1989 other than honorable discharge status.  See Mahoney v. Del Toro, No. 22-11074, 2023 WL 3587285 (D. Mass. May 22, 2023).  We agree with the district court that the BCNR reasonably determined that Mahoney had failed to provide "substantial evidence" of "probable material error or injustice" to overcome the BCNR's presumption that military officers "have properly discharged their official duties."  32 C.F.R. § 723.3(e)(2).  We hold that the BCNR's decision was not arbitrary or capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law.  See 5 U.S.C. § 706(2).  We affirm the district court's decision and reject Mahoney's challenge to the BCNR's decision.

**I.**

The following undisputed facts were in the record before the BCNR.  Mahoney had two periods of service.  The first, from 1985 to 1988, resulted in an honorable discharge.  The second period, from 1988 to 1989, resulted in the other than honorable discharge status at issue before the BCNR.

Mahoney first enlisted in the Navy on August 27, 1985.  During this enlistment, he "witnessed a number of traumatic events"

while deployed on the USS Luce, which escorted oil tankers throughout the Persian Gulf during the Iran-Iraq war. Mahoney did not receive any non-judicial punishments ("NJPs") during this time, and he was awarded a commendation for his work on the USS Luce and another for outstanding performance. He received three service ribbons. On August 24, 1988, Mahoney's first deployment ended, and he was honorably discharged.

Mahoney reenlisted the next day. The second period of service was markedly different. He was again assigned to the USS Luce, which was then stationed in Florida. In December 1988, Mahoney received an NJP for an unauthorized absence of thirty minutes from his appointed place of duty. In January 1989, he was apprehended by civilian authorities for driving while intoxicated, speeding, and "attaching [a] tag to [a] vehicle not assigned" to it. In February 1989, he received a second NJP for a separate incident involving "drunkenness."

In March 1989, the Navy evaluated Mahoney for and diagnosed him with alcohol dependency. The Navy evaluator recommended that Mahoney participate in an inpatient program for treatment of his alcohol dependency. Mahoney received treatment at the Naval Hospital in Pensacola, Florida from April 23 to June 2, 1989. He did not receive treatment during this time for "[his] stress disorder or the stress symptoms [he provided some evidence to the BCNR he] was then experiencing." In July 1989, following

- 3 -

a relapse of his alcohol dependency, Mahoney received a third NJP for an unauthorized absence of one hour and fifty-three minutes.

In September 1989, Mahoney tested positive for marijuana following a random urinalysis. He did not contest the positive result of the urinalysis. He received a fourth NJP that month for an unauthorized absence of eleven hours and thirty minutes, another and different unauthorized absence of thirty minutes, and for wrongful use of a controlled substance.

On September 28, 1989, Mahoney's commanding officer sent him a letter notifying him that he was "being considered for an administrative discharge from the naval service by reason of Misconduct due to drug abuse and a pattern of misconduct as evidenced by four Commanding Officer's Non-Judicial Punis[h]ments in this enlistment." The letter further gave him notice that "[i]f separation is approved, the characteri[]zation of your service may be under other than honorable conditions."

Mahoney in response declined an opportunity to consult with counsel or to be heard before an administrative board. In a voluntary statement to the Navy on September 29, 1989, Mahoney stated that he "underst[oo]d [he was] being processed for discharge for misconduct," and that he "still ha[s] not overcome [his] drinking problem." Mahoney further stated that his "only concern [was for] this processing [to go] as smoothly as possible" so that he could "receive treatment in connection with this processing."

On October 16, 1989, Mahoney declined an offer by the Navy to participate in a Department of Veterans Affairs ("VA") thirty-day drug treatment program for which he was eligible.

On October 17, 1989, Mahoney was discharged from the Navy under other than honorable conditions. In discharge paperwork recommending administrative separation signed by Mahoney's commanding officer, the reason for the separation was stated as "misconduct due to drug abuse and pattern of misconduct." The recommendation further listed the dates of the four NJPs that Mahoney had received, as well as the reasons for each NJP. Under "Comments and recommendations of Commanding Officer," the recommendation stated:

> [Mahoney] was discharged from active Naval Service due to drug abuse and a pattern of Misconduct with characterization of service as other than honorable. The action taken is considered appropriate due to [Mahoney's] continued flagrant and willful violations of the [Uniform Code of Military Justice], poor attitude and resultant burden to the command. [Mahoney] was counseled . . . on [July 16, 1989], and [December 12, 1988,] concerning being processed for a discharge under less than honorable conditions if his performance and behavior does not improve. [Mahoney] had previously indicated his desire to participate in the VA drug treatment program. On [October 16, 1989,] [Mahoney] changed his request for the VA drug program and signed page 13 stating he declines this treatment. [Mahoney's] disciplinary record documents his continued misconduct. The most recent incident includes two specifications of going on unauthorized absence and one specification of wrongful use of controlled substance. Based upon a

- 5 -

thorough review of all evidence presented I have reached a conclusion that [Mahoney] is of no further use to the Naval Service and that any continued time spent in the Navy would only cause the Navy and the command more trouble than it is worth. [Mahoney] does not object to type of discharge.

On his discharge, Mahoney did not contest the finding that he had used marijuana during his service, his commanding officer's conclusions, or his other than honorable discharge status, nor did he explain his decision to reject the offered drug treatment program.

**II.**

**A.**

On September 17, 2018, approximately twenty-nine years after his discharge from the Navy, Mahoney submitted through counsel a petition to the BCNR "request[ing] that the [BCNR] upgrade his characterization of service to Honorable or, in the alternative, General Under Honorable Conditions." Mahoney provided three "main reasons" for his request. First, that

> [Post-traumatic stress disorder ("PTSD")] should be considered a mitigating factor for the misconduct that [Mahoney] engaged in that ultimately led to [his] discharge under Other than Honorable circumstances, and in this review by the Board, these circumstances, as mitigating factors, should be given liberal and special consideration under the Hagel Memo and the Kurta Memo.

Second, Mahoney argued that his "commendable overall in-service performance and model post-discharge behavior demonstrate

- 6 -

equitable considerations that weigh in favor of an upgrade." Third, Mahoney "would under current procedures likely have been medically discharged." Mahoney stated in his petition that his PTSD had caused his alcohol dependency, which in turn had led to misconduct that "amounted to no more than multiple instances of unauthorized absences, with some absences being very short in duration, and an instance of drunkenness."

Mahoney did not address in his petition the Navy's finding that he had wrongfully used a controlled substance. Mahoney requested an opportunity to appear before the BCNR as part of his petition.

Mahoney submitted in support of his petition an assessment report by Sandra A. Dixon, a licensed psychologist. Based on in-person interviews and medical records provided for review, Dr. Dixon concluded that during Mahoney's second enlistment he had met the criteria for a PTSD diagnosis "at a severe level" and a Major Depressive Disorder diagnosis. Dr. Dixon also concluded that, had Mahoney received a more thorough evaluation during his time in the Navy, it "likely would have revealed that he was meeting the diagnosis for PTSD," and further, that the treatment Mahoney had received for alcohol abuse during his enlistment was inadequate for "someone who was exhibiting trauma responses." Dr. Dixon concluded that "there is a clear nexus between [Mahoney's] mental health disorders, specifically

PTSD, and the conduct leading to [his] discharge." Dr. Dixon also stated that Mahoney's PTSD symptoms "directly led to his abuse of alcohol."

Mahoney additionally submitted in support of his petition an affidavit. Mahoney in this affidavit stated that during his second enlistment,

> [he] had extreme difficulty sleeping and felt like [he] was always under constant stress. [He] felt like [he] needed to sit with [his] back to the wall. [He] also had overwhelming feelings of horror, anger and guilt daily, and continued to relive [his] experience in the Persian Gulf. [He] discovered that alcohol helped stop some of these troubling thoughts and also helped [him] fall asleep. [He] was not aware at the time that [he] was exhibiting symptoms because of an undiagnosed post-traumatic stress disorder [he] had stemming from the traumatic experience in the Persian Gulf.

Key to the BCNR's decision was Mahoney's statement, also in this affidavit, which addressed for the first time the positive urinalysis:

> I did not knowingly consume any marijuana or any other controlled substance during [my enlistments in the Navy]. . . . In 1989, I was involved in an incident during liberty where I was surrounded by other sailors who were consuming marijuana. I did not knowingly consume any marijuana that evening on liberty, but I was drinking alcohol. During this time, another sailor tossed a marijuana joint that landed in the alcoholic beverage I was drinking at the time. The next day, I was subject to a random urinalysis and I tested positive for marijuana.

- 8 -

Mahoney has not contested the results of the urinalysis.

As part of the BCNR's review of Mahoney's petition, the BCNR referred Mahoney's petition to a Navy mental health professional, Dr. Molly Summers, who submitted an advisory opinion based on her review of the administrative record. Dr. Summers concluded in her opinion that "[i]t is reasonable to attribute [Mahoney's] continued misconduct following alcohol treatment to continued mental health symptoms."

On March 2, 2020, the BCNR denied Mahoney's petition in a decision letter. The BCNR in its letter rejected Mahoney's request for a personal appearance, determining that "a personal appearance with or without counsel [would] not materially add to [the BCNR's] understanding of the issues involved." The BCNR therefore "considered [Mahoney's] case based on the evidence of record."

The BCNR stated in its decision letter that it had "carefully reviewed [Mahoney's] application, weighed all potentially mitigating factors, and considered [Mahoney's] contention that PTSD should be considered a mitigating factor for the misconduct [he] engaged in that ultimately led to his [other than honorable] discharge." (Emphasis added.) The BCNR in its decision letter considered Mahoney's contention that his alcohol abuse had resulted from his PTSD symptoms. The BCNR further considered Mahoney's "commendable overall in-service performance

- 9 -

and model post-discharge behavior, . . . [his] post-service achievements, such as being sober since 2006, graduating from college, as well as [his] involvement as an active church member and community volunteer." The BCNR additionally "considered [Mahoney's] contention that, under current procedures, [he] would likely have been medically discharged instead of receiving an administrative discharge with an [other than honorable] characterization of service."

The BCNR concluded that these factors "did not mitigate the drug-related misconduct which led to [Mahoney's] discharge," and so this misconduct continued to "support[] discharge from the naval service with an other than honorable characterization of service." The BCNR determined that Mahoney had "not meaningfully address[ed] the . . . 'drug abuse' basis for [his separation] -- other than contending that [he] did not knowingly use a controlled substance." The BCNR stated that it was "not persuaded to disturb th[e] finding" that "by a preponderance of the evidence" Mahoney had wrongfully used a controlled substance in-service. The BCNR stated that Mahoney had not "explain[ed] how a 'marijuana joint' landing in [his] alcoholic beverage [had] caused [him] to ingest marijuana." (Emphasis added.) The BCNR took into account in its decision that Mahoney had "not admit[ted] to wrongful drug use," and had not "contend[ed] that wrongful drug or marijuana use was a part of [his] means of self-medicating due

- 10 -

to PTSD.  <u>At no point [did] [Mahoney] or any medical professional attribute [his] NJP for wrongful drug use to self-medication due to PTSD</u>."  (Emphasis added.)

The BCNR provided further explanation of its reasoning:

> Assuming, <u>arguendo</u>, that [Mahoney] had undiagnosed, in-service PTSD at the time of [his] misconduct, after thorough consideration of [his] contentions and mitigating factors, the Board, applying liberal consideration, determined that [Mahoney's] PTSD did not mitigate the drug-related misconduct which led to [his] discharge. . . .  The Board determined that the explanation for testing positive for marijuana contained in [Mahoney's] sworn personal statement was neither plausible nor supported by [his] submission.  Moreover, [Mahoney] ha[s] consistently denied wrongful use of drugs in-service -- let alone ever attributing it to another form of self-medication due to [his] undiagnosed, in-service PTSD.  As such, [Mahoney's] PTSD cannot be said to have mitigated [his] wrongful drug use on this occasion, or [his] separation based on misconduct due to that drug abuse.  As this determination is dispositive of [his] petition, the Board need not address the merits of [Mahoney's] PTSD contentions or the alternate, pattern of misconduct, basis of [his] separation.  Accordingly, under the totality of the circumstances and for the foregoing reasons, the Board in its review discerned no probable material error or injustice that warrants changing [Mahoney's] characterization of service.

## B.

On July 5, 2022, Mahoney filed a complaint against appellee Carlos Del Toro, U.S. Secretary of the Navy, in the

- 11 -

District Court for the District of Massachusetts, requesting judicial review of the BCNR's decision. See Mahoney, 2023 WL 3587285, at *6. Mahoney "contend[ed] that the BCNR's decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law." Id. Mahoney, pursuant to the APA, 5 U.S.C. § 706(2), "request[ed] that the court enjoin the BCNR to correct his record to reflect a discharge characterization of honorable or general under honorable conditions." Mahoney, 2023 WL 3587285, at *6.

On December 22, 2022, Mahoney, pursuant to Federal Rules of Civil Procedure 12(c) and 56, moved for judgment on the pleadings or in the alternative for summary judgment, "request[ing] that the Court set aside the BCNR's decision and remand the matter to the BCNR for reconsideration." Id. Del Toro cross-moved for judgment on the pleadings. Id. The district court concluded that "the decision of the BCNR to deny relief was not arbitrary or capricious, an abuse of discretion, or contrary to law." Id. at *10. The court denied Mahoney's motions and granted Del Toro's cross-motion. Id. Mahoney timely appealed.

### III.

### A.

Under the APA, a court may set aside an agency decision if that decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if the decision is

- 12 -

"unsupported by substantial evidence." Sasen v. Spencer, 879 F.3d 354, 359-60 (1st Cir. 2018) (quoting 5 U.S.C. § 706(2)(A), (E)). This APA standard applies to judicial review of BCNR decisions. See Chappell v. Wallace, 462 U.S. 296, 303 (1983); Doyon v. United States, 58 F.4th 1235, 1242 (Fed. Cir. 2023). In applying this standard, this court must "review the whole record or those parts of it cited by a party." Sasen, 879 F.3d at 360 (quoting 5 U.S.C. § 706(2)). We "afford no special deference to the district court's determination[] [under this standard] but, rather, review [its] determination[] de novo." Id. We therefore focus on the BCNR's decision in reviewing Mahoney's APA claim.

"Judicial review of agency decisions is 'highly deferential.'" Atieh v. Riordan, 797 F.3d 135, 138 (1st Cir. 2015) (quoting River St. Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st Cir. 2009)). Accordingly, a reviewing court must uphold an agency's decision that is free from "legal errors," United States v. Sawyer, 521 F.3d 792, 794 (7th Cir. 2008), and "is supported by any rational review of the record," Atieh, 797 F.3d at 138. This court "may not substitute its judgment for that of the [BCNR], even if it disagrees with the [BCNR's] conclusions." Id. (quoting River St. Donuts, 558 F.3d at 114).[1]

---

[1] Because this case involves review of cross-motions for judgment on the pleadings, we are required to "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." See Mercury Sys., Inc. v.

**B.**

We outline the applicable law, all of which was considered by the BCNR.

The Secretary of the Navy may through the BCNR "correct any military record of the [Navy] when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). This textual language "enable[s] the Secretary, acting through a civilian Correction Board, to change the kind of discharge a former service [member] ha[s] received." Ashe v. McNamara, 355 F.2d 277, 280 (1st Cir. 1965). We agree with those circuits that have found this language to "substantially restrict the authority of the reviewing court to upset the Secretary's determination."[2] Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989); see also Williams v. Wynne, 533 F.3d 360, 368 (5th Cir. 2008) ("In light of this language, the review of military board judgments is 'exceptionally deferential.'" (quoting Viles v. Ball, 872 F.2d 491, 495 (D.C. Cir. 1989))); Bolton v. Dep't of the Navy Bd. for Corr. of Naval Recs., 914 F.3d 401, 407 (6th Cir. 2019) ("[O]ur review involves 'an unusually deferential

---

S'holder Representative Servs., LLC, 820 F.3d 46, 51 (1st Cir. 2016) (quoting Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004)).

[2] Mahoney's claims lack merit whether we apply this unusually deferential standard of review or a typical APA deferential standard.

application of the "arbitrary or capricious" standard' of the APA." (quoting Kreis, 866 F.2d at 1514)).

Under its regulations, the BCNR "relies on a presumption of regularity to support the official actions of public officers," and an applicant must present "substantial evidence" of "probable material error or injustice" to overcome this presumption. 32 C.F.R. § 723.3(e)(2). Hence, "the Board may deny relief if it concludes that 'the evidence of record fails to'" refute this presumption. Sasen, 879 F.3d at 360-61 (quoting 32 C.F.R. § 723.3(e)(2)).

By statute, the BCNR must apply "liberal consideration" in its review where a

> claim . . . for review of a discharge or dismissal is based in whole or in part on matters relating to [PTSD] or traumatic brain injury as supporting rationale, . . . and [where such] [PTSD] or traumatic brain injury is related to combat or military sexual trauma as determined by the Secretary concerned. . . . [The BCNR shall] review the claim with liberal consideration to the claimant that [PTSD] or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the claimant's discharge or dismissal.

10 U.S.C. § 1552(h)(1), (2)(B) (emphasis added).

The Department of Defense has issued a series of memoranda which advise Boards for Correction of Military and Naval Records on review of these claims. On September 3, 2014, a

memorandum was issued by then Secretary of Defense Chuck Hagel to the secretaries of the military departments ("Hagel Memo"), providing supplemental policy guidance for Boards reviewing petitions to upgrade discharge statuses based on claims of previously unrecognized PTSD diagnoses. The Hagel Memo is "not intended to interfere with or impede the Boards' statutory independence to correct errors or remove injustices through the correction of military records." The memorandum provides that "[l]iberal consideration will be given in petitions for changes in characterization of service to Service treatment record entries which document one or more symptoms which meet the diagnostic criteria of [PTSD] or related conditions." The Hagel Memo further provides that "[i]n cases in which PTSD or PTSD-related conditions may be reasonably determined to have existed at the time of discharge, those conditions will be considered potential mitigating factors in the misconduct that caused the under other than honorable conditions characterization of service."

On August 25, 2017, then Undersecretary of Defense Anthony Kurta issued a memorandum ("Kurta Memo") whose purpose, among others, is to provide "clarifying guidance to . . . Boards for Correction of Military/Naval Records . . . considering requests by veterans for modification of their discharges due in whole or in part to mental health conditions, including [PTSD]." Like its predecessor, the Kurta Memo's guidance is "not intended to

interfere with or impede the Boards' statutory independence." In that context, the Kurta Memo states that among its guidance, "[c]onditions or experiences that may reasonably have existed at the time of discharge will be liberally considered as excusing or mitigating the discharge."[3]

On July 25, 2018, a memorandum was issued by then Under Secretary of Defense Robert Wilkie ("Wilkie Memo"). The Wilkie Memo provides "standards for . . . Boards for Correction of Military / Naval Records . . . in determining whether relief is warranted on the basis of equity, injustice, or clemency," and reinforces the BCNR's broad discretion in reviewing claims. The memorandum specifies that its

> guidance does not mandate relief, but rather provides standards and principles to guide [the Boards] in application of their equitable relief authority. Each case will be assessed on its own merits. The relative weight of each principle and whether the principle supports relief in a particular case, are within the sound discretion of each board.

## C.

The BCNR's determination that Mahoney did not provide substantial evidence of probable material error or injustice in his discharge characterization was "supported by a[] rational view of the record," Atieh, 797 F.3d at 138, and was reasonably "based

---

[3] The codification of the liberal consideration standard followed issuance of the Kurta Memo. See Doyon, 58 F.4th at 1239.

- 17 -

on a consideration of the relevant factors," U.S. Dep't of the Interior v. Fed. Energy Regul. Comm'n, 876 F.3d 360, 368 (1st Cir. 2015) (quoting Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)).  As the BCNR explained in its decision letter, there was sufficient basis for Mahoney's other than honorable discharge characterization due to his wrongful drug use, his lack of candor about and refusal to take responsibility for such use, and the absence of any evidence in the record that this drug use resulted from PTSD symptoms.  The BCNR reasonably concluded that Mahoney's refusal to admit to his wrongful drug use and his implausible explanation of the positive urinalysis result did not warrant changing his other than honorable discharge characterization.

Not addressing these holdings, Mahoney argues that his wrongful drug use was "relatively minor" in nature, and so did not on its own warrant his discharge characterization.  He points to language in the Wilkie Memo stating:

> The relative severity of some misconduct can change over time, thereby changing the relative weight of the misconduct in the case of the mitigating evidence in a case.  For example, marijuana use is still unlawful in the military, but it is now legal under state law in some states and it may be viewed, in the context of mitigating evidence, as less severe today than it was decades ago.

The argument misses the point.  The Wilkie Memo lists among factors that the Boards should consider "[a]n applicant's candor" and

- 18 -

"[a]cceptance of responsibility, remorse, or atonement for misconduct."

Mahoney next lodges two legal challenges to the BCNR's decision: that it failed to apply the liberal consideration standard to the entirety of his claim and that, even if it did, it applied the standard incorrectly when it ultimately denied his petition. This argument misapprehends the BCNR's decision letter.[4] The BCNR did apply the liberal consideration standard to the entirety of Mahoney's petition. The BCNR in its decision letter acknowledged Mahoney's PTSD diagnosis and stated that it had "considered [Mahoney's] contention that PTSD should be considered a mitigating factor for the misconduct [he] engaged in that ultimately led to [his] [other than honorable] discharge." The BCNR further stated that it had considered "the diagnoses, comments, and opinion of [Mahoney's] civilian mental health provider that there was a clear nexus between [his] mental health disorders and the conduct leading to [his] discharge." The BCNR moreover stated explicitly that it had "appl[ied] liberal consideration" before reaching its conclusion that Mahoney's PTSD

_____

[4]    Mahoney also argues that the district court "erred in concluding that the BCNR could decline to apply the 'liberal consideration' standard in this case." The district court did not conclude that the BCNR could choose not to apply the liberal consideration standard, but rather determined that this standard did not require the BCNR to "give controlling weight" to Mahoney's PTSD diagnosis. See Mahoney, 2023 WL 3587285, at *10.

- 19 -

diagnosis "did not mitigate the drug-related misconduct which led to [his] discharge."[5]  (Emphasis added.)

The BCNR's decision, in accordance with Department of Defense guidance, also took into account other potentially mitigating factors raised by Mahoney in his petition.  This includes Mahoney's "'commendable overall in-service performance and model post-discharge behavior' and the numerous advocacy letters submitted on [his] behalf"; Mahoney's "post-service achievements, such as being sober since 2006, graduating from college, as well as [his] involvement as an active church member and community volunteer"; and Mahoney's "contention that, under current procedures, [he] would likely have been medically discharged instead of receiving an administrative discharge with an [other than honorable] characterization of service."  The BCNR moreover stated in its decision letter that it had taken into account guidance provided in the Hagel, Kurta, and Wilkie Memos, and that the BCNR had "weighed all potentially mitigating factors."

Mahoney argues that, on the basis of these potentially mitigating factors, the BCNR was "virtually compelled" to grant his petition and thus incorrectly applied the liberal

---

[5]    Mahoney attempts to make much of the BCNR's statement in its decision letter that it "need not address the merits of [Mahoney's] PTSD contentions or the alternate, pattern of misconduct, basis for [his] separation."  But the liberal consideration standard does not require the BCNR to reach the merits of arguments that do not pertain to its holding.

consideration standard in failing to do so. This is not so. While the Wilkie Memo instructs that the BCNR should consider various principles and mitigating factors as part of its determination, the memorandum also provides that "[t]he relative weight of each principle and whether the principle supports relief in a particular case, are within the sound discretion of each board." It was the BCNR's role under the law to determine whether these factors, when weighed against Mahoney's misconduct, indicated that there was probable material error or injustice in Mahoney's discharge characterization, and this is precisely what the BCNR did.[6] The BCNR moreover correctly applied the liberal consideration standard when it denied Mahoney's petition in part on the basis that there was no evident causal relationship between his PTSD symptoms and

---

[6] Mahoney is also incorrect that the BCNR did not have the authority to uphold his discharge status solely on the basis of his marijuana use, a decision which Mahoney maintains effectively "altered the basis for [his] discharge ex post facto." It is clear from the record that Mahoney's discharge characterization at least in part resulted from his marijuana use: Mahoney's discharge paperwork listed as one of the military offenses leading to his separation his "wrongful use of a controlled substance." It is moreover apparent that the "drug abuse" basis for Mahoney's discharge encompassed Mahoney's use of marijuana; in an "Alcohol and Drug Abuse Screening Certificate" signed by Mahoney during his enlistment, the Navy defined drug abuse as "[a]ny illicit use or possession of drugs." The BCNR in its decision letter acknowledged that Mahoney was administratively separated both for misconduct due to drug abuse and a pattern of misconduct, but determined that "either basis of misconduct . . . supports discharge from the naval service with an other than honorable characterization of service." This determination was "reasonable and reasonably explained." See Jackson v. Mabus, 808 F.3d 933, 936 (D.C. Cir. 2015).

- 21 -

his use of marijuana.[7] See Coburn v. Murphy, 827 F.3d 1122, 1126-27 (D.C. Cir. 2016) (affirming decision by Army Board for Correction of Military Records because Board "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made" (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983))).

We additionally reject Mahoney's argument that there was insufficient support in the record for the BCNR's conclusion that his account of the positive urinalysis was not credible.[8] The BCNR explained in its decision letter that Mahoney had failed to "explain how a 'marijuana joint' landing in [his] alcoholic beverage caused [him] to ingest marijuana -- let alone in sufficient quantity to test positive for THC at the level required under Navy mass spectrometry analysis."[9] The BCNR further noted

_____

[7]    The Hagel Memo instructs the Corrections Boards to "exercise caution in weighing evidence of mitigation in all cases of misconduct by carefully considering the likely causal relationship of [PTSD] symptoms to the misconduct."

[8]    Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986), cited by Mahoney, in which the court held that an administrative law judge's credibility finding "must be supported by substantial evidence and the [judge] must make specific findings as to the relevant evidence he considered in determining to disbelieve the [applicant]," is therefore inapposite, as the result here is supported by substantial evidence.

[9]    Mahoney contends that "[p]ublicly available information . . . indicates that ingestion of marijuana -- including drinking marijuana tea -- can lead to a

- 22 -

that Mahoney had been found guilty of wrongful drug use by a preponderance of the evidence.

We also find substantial evidence for the BCNR's factual conclusion that "[a]t no point d[id Mahoney] or any medical professional attribute [his] NJP for wrongful drug use to self-medication due to PTSD." Mahoney maintained in the proceedings before the BCNR that his ingestion of marijuana during service was accidental, and he did not take the position that he intentionally self-medicated with marijuana to alleviate his PTSD symptoms. Nothing in Dr. Dixon's or Dr. Summers's opinions suggested otherwise.

Mahoney is also wrong that it was "unfair for the BCNR to discredit [his] affidavit as not credible" while "denying him the opportunity for a personal appearance" or to "supplement his application with more information."[10] The discharge notice Mahoney

_____

positive urinalysis." However, Mahoney points to nothing in the record to suggest that a positive urinalysis can result from consumption of a beverage in which a "marijuana joint" has fallen. Mahoney in his briefing cites an internet source which describes the potency of "marijuana tea," but he does not argue that this source was in the record and furthermore, Mahoney does not explain how this source establishes the plausibility of his account, which did not involve consumption of marijuana tea.

[10] The law imposes no such requirements on the BCNR. See 32 C.F.R. § 723.4(a) ("In each case in which the Board determines a hearing is warranted, [the] applicant will be entitled to appear before the Board either in person or by counsel."); Burns v. Marsh, 820 F.2d 1108, 1110 (9th Cir. 1987) (holding that whether hearings are held under 10 U.S.C. § 1552(a) is at the discretion of the Board).

- 23 -

received expressly stated his discharge was "due to drug abuse and pattern of misconduct." Mahoney was on notice at the time he filed his petition that it was his burden to "provide 'substantial evidence' in order to overcome the [BCNR's] presumption that 'public officers,' including military officers, 'have properly discharged their official duties.'" Roberts v. United States, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting 32 C.F.R. § 723.3(e)(2)). Mahoney furthermore had the opportunity at the time of his petition to put forth any evidence in support of his claim. See 32 C.F.R. § 723.4(e)(1) ("It is the responsibility of the applicant to procure such evidence not contained in the official records of the Department of the Navy as he/she desires to present in support of his/her case.").

It is appropriate as we end this opinion to highlight the BCNR's recognition of Mahoney's commendable efforts to rehabilitate himself in the years following his discharge. We affirm the district court's decision.