**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1670
_____

PNC BANK N.A., Individually and as Successor in Interest to NATIONAL CITY
BANK,
                                                        Appellant

v.

AXIS INSURANCE COMPANY; ACE AMERICAN INSURANCE COMPANY;
ARCH INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S
SUBSCRIBING TO POLICY NO. B0509QA096708; ASPEN INSURANCE UK LTD.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:21-cv-01299)
District Judge:  Honorable Mark R. Hornak
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 4, 2025

Before: RESTREPO, MONTGOMERY-REEVES, and SCIRICA, *Circuit Judges*.

(Opinion filed: march)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**MONTGOMERY-REEVES**, *Circuit Judge*.

A group of insurance companies (the "Insurers") issued a management liability insurance policy (the "Insurance Policy") to PNC Bank, N.A. ("PNC Bank"). After PNC Bank became liable for a judgment for the acts of an acquired company, PNC Bank sought indemnification from the Insurers. The Insurers refused to cover the claim, and PNC Bank sued. Because we agree with the District Court that a provision excluding prior wrongful acts of acquired companies bars PNC Bank's claim, we will affirm the District Court's judgment entered for the Insurers.

## I.    BACKGROUND

The PNC Financial Services Group Inc. (the "Parent Company") and the Insurers entered into the Insurance Policy for claims made between December 31, 2008, and December 31, 2009. On December 31, 2008, the Parent Company acquired National City Corporation ("National City"); the Parent Company then merged National City into PNC Bank; and PNC Bank became the successor-in-interest to National City.

In August 2009, a group of plaintiffs sued PNC Bank and National City alleging that a bank previously acquired by National City had breached its fiduciary duties in the management of certain trusts. This lawsuit led to the entry of a $106,641,791.97 judgment against PNC Bank.

PNC Bank turned to its Insurers and demanded that the Insurers pay for the judgment, legal fees, and other expenses. The Insurers denied coverage, and PNC Bank sued for breach of contract and declaratory judgment in the District Court.

2

PNC Bank and the Insurers both moved for judgment on the pleadings. The Insurers did not contest that PNC Bank's claim falls under the Insurance Policy's general coverage terms. But the Insurers denied coverage relying on exclusionary language in the Insurance Policy to argue that the policy did not cover PNC Bank's loss.

The District Court agreed with the Insurers and concluded that exclusionary language unambiguously negated PNC Bank's coverage claim. Thus, the District Court entered judgment for the Insurers, and PNC Bank appealed.

## II.    DISCUSSION[1]

PNC Bank argues that the District Court erred in granting the Insurers' motion and in denying PNC Bank's motion because no exclusionary language applied. To resolve

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

"We have plenary review of the District Court's order dismissing [PNC Bank's] claims pursuant to Federal Rule of Civil Procedure 12(c)." *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001) (citing *Consol. Rail Corp. v. Portlight, Inc.*, 188 F.3d 93, 95–96 (3d Cir. 1999)). "We must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980) (subsequent history omitted)). "We may also consider documents attached to the complaint," such as the insurance policy documents. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "Because this case involves review of cross-motions for judgment on the pleadings, we are required to 'determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" *Mahoney v. Del Toro*, 99 F.4th 25, 34 n.1 (1st Cir. 2024) (quoting *Mercury Sys., Inc. v. S'holder Representative Servs., LLC*, 820 F.3d 46, 51 (1st Cir. 2016)).

3

this appeal, we first describe the Insurance Policy at issue. We then explain why the Insurers properly denied coverage for PNC Bank's claim.

### A. The Insurance Policy's Relevant Terms

The coverage provision in this Insurance Policy applies to "all **Loss** for which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period** . . . for a **Wrongful Act** which takes place during or prior to the **Policy Period**."[2] App. 107. A few definitions are necessary to understand the coverage provision. The "**Policy Period**" ran from December 31, 2008, to December 31, 2009.[3] "**Insured**" parties include "the **Company** and its predecessors in business," App. 109; "**Company**," in turn, is defined as "the **Parent Company** and/or its **Subsidiaries**," App. 108. Finally, "**Wrongful Acts**" include "any breach of the responsibilities, obligations, or duties" by the Company's fiduciaries. App. 111–12. PNC Bank is the primary operating subsidiary to The PNC Financial Services Group, Inc., the "Parent Company."

Thus, the coverage provision provides that losses resulting from claims made during the policy period against PNC Bank or the Parent Company are covered under the Insurance Policy.

---

[2] The Insurers each issued excess liability policies to PNC Bank, appending a policy issued by Houston Casualty Company ("HCC") to PNC Bank. But because each insurer's excess liability policy with PNC Bank follows the terms of HCC's policies for all purposes discussed here, the Insurance Policy is discussed in the singular.

[3] It is undisputed that the policy period began before PNC Bank's acquisition of National City.

The parties agree with this interpretation. And the Insurers do not dispute that this would seem to imply that coverage applies to the dispute here. But, according to the Insurers, the analysis does not stop there. Instead, we must turn to exclusionary language that limits coverage to determine whether the Insurers are obligated to pay this claim.

In particular, the Insurers point us to the Changes in Exposure Provision, which outlines the scope of coverage when PNC Bank (or the Parent Company) is involved in a merger, acquisition, or consolidation during the policy period:

> If, during the **Policy Period**: (i) an organization or entity becomes a **Subsidiary**, or (ii) the **Company** acquires any organization or entity by merger into or consolidation with the **Company**, then coverage shall apply to such organization or entity and the **Insureds** of such organization or entity, but only with respect to **Wrongful Act(s)** committed, attempted, or allegedly committed or attempted, at the time of or after such event . . . .

App. 95–96. Thus, under this provision, if PNC Bank or the Parent Company acquires another company, the Insurers will not cover claims for wrongful acts committed by the acquired company before the acquisition occurred.

## B.    The Insurance Policy's Application

PNC Bank does not dispute the general notion that the Changes in Exposure Provision excludes insurance coverage for an acquired company's wrongful acts committed before acquisition. And all agree that an acquired company committed the wrongful acts here long before the acquisition. But PNC Bank argues that the Changes in Exposure Provision does not apply for two reasons: (1) the National City acquisition does not implicate the Changes in Exposure Provision because PNC Bank defended the

5

lawsuit and paid the judgment; and (2) the Insurance Policy's coverage terms supersede the Changes in Exposure Provision. We disagree.[4]

First, PNC Bank argues that because it incurred the judgment and defended the lawsuit, PNC Bank is the entity at issue for purposes of the Changes in Exposure Provision. And because PNC Bank "was already a subsidiary" of the Parent Company before the policy period, PNC Bank believes that the Changes in Exposure Provision does not apply. Opening Br. 27. This follows, in PNC Bank's view, from the fact that PNC Bank is "the only entity seeking coverage" and "was not an acquired entity." Reply Br. 3, 8.

---

[4] "Interpretation of an insurance policy is a question of law, and review is plenary." *Sikirica*, 416 F.3d at 220 (citing *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 496 (3d Cir. 2002)). "When reviewing an insurance policy, we apply general principles of contract interpretation in order to 'ascertain the intent of the parties as manifested by the terms used in the written insurance policy.'" *Rush v. Erie Ins. Exch.*, 308 A.3d 780, 790 (Pa. 2024) (quoting *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019)). Thus, "[w]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language." *Gallagher*, 201 A.3d at 137 (alteration in original) (quoting *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)). But "where a policy provision is ambiguous, it is generally construed against the insurance company as the drafter of the agreement." *Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 852 n.6 (Pa. 2015) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). "Policy terms are ambiguous 'if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020) (quoting *Madison Constr. Co.*, 735 A.2d at 106).

The Changes in Exposure Provision operates as an exclusion because it limits PNC Bank's coverage under the insurance policy. Thus, the Insurers "bear[] the burden of proving" that the Changes in Exposure Provision applies, *Madison Constr. Co.*, 735 A.2d at 106 (collecting cases); and we interpret the exclusion "narrowly in favor of coverage," *Politsopoulos*, 115 A.3d at 852 n.6 (citing *Eichelberger v. Warner*, 434 A.2d 747, 750 (Pa. Super. Ct. 1981)).

But PNC Bank's argument ignores the plain language of the second clause of the Changes in Exposure Provision and that clause's interaction with the defined term "**Company**." The Changes in Exposure Provision applies to exclude an acquired company's "**Wrongful Acts**" that occurred before the acquisition; and it applies regardless of whether the acquired company becomes a subsidiary to the Parent Company or is acquired by "merger into or consolidation with" the "**Company**." App. 95. The latter is what happened here. In the words of the policy's language, "the **Company**"— the Parent Company—"acquire[d]" National City and "merg[ed] into or consolidate[d]" it "with the **Company**"—PNC Bank. App. 95. Later, plaintiffs sued for National City's wrongful acts taken before the acquisition. Because the lawsuit here focused on National City's wrongful acts taken before the acquisition, the Changes in Exposure Provision applies. That PNC Bank became the successor in interest to National City, defended the lawsuit, and paid the judgment does not negate the provision's application; indeed, it contemplated that sequence of events.[5]

Second, PNC Bank contends that applying the Changes in Exposure Provision conflicts with the Insurance Policy's coverage terms. The Insurance Policy covers claims against an "**Insured**" party, which includes the Parent Company, PNC Bank, and their predecessors in business. Thus, in PNC Bank's view, the wrongful acts taken by

---

[5] PNC Bank also implies that the absence of explicit exclusionary terms in the Insurance Policy supports construing coverage broadly. The unambiguous application of the Changes in Exposure Provision forecloses that argument. *See Gallagher*, 201 A.3d at 137.

National City, a predecessor in business to PNC Bank for whom PNC Bank is legally responsible, fall within the umbrella of coverage.

True, the Insurance Policy specifies that a coverage term must prevail over a general term when a conflict exists.[6] And the Changes in Exposure Provision is a general term limiting the scope of the Insurance Policy by not providing coverage when it applies. But the Changes in Exposure Provision does not "conflict" with the coverage terms by defining the metes and bounds of the Insurance Policy. Another general term and condition in the Insurance Policy helps explain why. The Exhaustion Provision explains that when the limit of liability is exhausted by payments by the Insurers under the Insurance Policy, no further coverage exists. But under PNC Bank's logic, a claim that falls within the coverage terms would "conflict" and thus supersede the otherwise applicable Exhaustion Provision when the Insurers already paid up to their limit of liability. All would agree that such an interpretation would lead to an absurd result contrary to the plain meaning of the Insurance Policy. The Changes in Exposure Provision is no different. In fact, if this Court adopts PNC Bank's position with respect to the Changes in Exposure Provision, PNC Bank could unilaterally expand the scope of carefully negotiated coverage terms by acquiring an entity saddled with liability risks and

---

[6] General terms and conditions "govern all Coverage Sections" of the Insurance Policy. App. 95. But "[i]f a General Term or Condition conflicts with any term or condition of a Coverage Section," then the coverage term prevails. *Id.*

8

making the Insurers pay for those risks. This interpretation is unsupported by the plain text and structure of the Insurance Policy.[7]

In short, the Changes in Exposure Provision's unambiguous text applies because the Parent Company acquired National City during the policy period and merged it into PNC Bank. PNC Bank's arguments to the contrary rely on unreasonable interpretations of the Insurance Policy. *Gallagher*, 201 A.3d at 137. Thus, National City's Wrongful Acts committed before that acquisition for which PNC Bank became liable are excluded from insurance coverage.[8]

## III.   CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[7] PNC Bank also suggests that the Changes in Exposure Provision was never meant to apply to this coverage section. First, "[a]s a general matter, the courts of appeals will not consider arguments raised on appeal for the first time in a reply brief." *United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 204–05 n.29 (3d Cir. 1990)). Second, even if we were to entertain this argument, it falls flat against other language in the Insurance Policy, such as the unambiguous statement that general terms like the Changes in Exposure Provision "govern *all* Coverage Sections of this Policy." App. 95 (emphasis added).

[8] Because applying the Changes in Exposure Provision is dispositive to PNC Bank's appeal, we decline to address the Insurers' separate arguments including those relating to the Interrelated Claims Provision.